## M'LAUGHLIN *versus* SIMPSON.

1. In a bill in Chancery, filed by one co-partner, to compel a settlement of the co-partnership accounts; it is competent for the complainant to join with his own claims, those of a deceased partner—the complainant being the administrator of the latter.

2. All that can be required in the conduct of an agent, is to pursue the instructions of his principal, if any have been given.

3. But if the powers of an agent are discretionary, then he will be held to act, to the best of his judgment, for the advantage of his principal; and should he fail in his judgment, and his principal suffer thereby, the agent is not accountable for the loss.

4. But, where business has been assumed by one, without the consent, and in violation of the rights, of others, he will be held to a strict account; and be liable for as much as might have been made by the best management.

This was a suit in Chancery, in Dallas Circuit court; to compel a settlement and disclosure of partnership accounts. The bill was filed by Simpson, in his own right, and as the administrator of William Read, deceased, against M'Laughlin—all co-partners of the late firm of M'Laughlin, Read & Simpson. A decree was had in favor of the complainant; and the case, by writ of error was brought into this court. The decree, and its affirmance here, having been rendered on a most voluminous exhibit of facts, they are not detailed at length

The case, among other matters, was chiefly argued upon two points of law, to wit: the question, whether Simpson could join, in his own bill, the claims of Read, his intestate co-partner; and a question of agency—M'Laughlin having acted as the agent of the firm. From the record, it appeared,

that M'Laughlin, under an arrangement with the firm, went to New York to settle the co-partnership debts; but failed to do so.

*Gordon,* for plaintiff in error—*Pickens, contra.*

LIPSCOMB, C. J.—The first error relied on, by the plaintiff in error, is, that there is a misjoinder of parties complainant.—That Simpson, as a partner, could not join the claims of Read, the deceased partner, with his own, by becoming administrator of Read. We can perceive no objection to Simpson's seeking an account, both for himself and for Read, his intestate, in the same bill: the privity of interest was the same between himself and his deceased partner, whose administrator he had become; and, it would have been incurring the trouble and expense of two suits, to have required him to file a separate bill, as administrator of Read. If Read's administrator had wished M'Laughlin to account for a distinct co-partnership, there would have been good reason to require the bill to have been separate; but Simpson's claims, in his own right, and as representative of Read, originated in the same transaction.

The second error relied on, is, that the decree disposes of the ware-house, as firm property, when the charge in the bill is not sufficient to let in the proof, that established the fact of its having been purchased, for the use of the firm. The bill charges, that a lease was obtained by the firm, in writing, for a lot, in the town of Selma, and that a warehouse was built thereon, with the funds of the firm, and employed in the same manner: when the answer denies, that a lease was obtained by the firm; but, that

M'LAUGHLIN *vs.* SIMPSON.

it was obtained by M'Laughlin, individually—and he proves, that the deed of lease was obtained in his own name.

It is contended, that the bill should have charged, the fact, as it existed, that the title was in the name of M'Laughlin; but, that it was for the use of the firm.—That the inference from the bill, is, that the lease was in the name of the firm. It is admitted, that the testimony is sufficient to prove a resulting trust for the firm, if it had been so charged. The charge, we believe to be broad enough to let in the proof. The bill does not assume to set out the particular manner, in which the lease was obtained for the firm; and it only charges, that it was obtained, by the firm. Now, if it was obtained for such purposes, and the title is in the name of M'Laughlin, the averment would be verified.

The third error relied on, is, that it does not appear, all of the debts of the firm, were paid; and that, until they have been paid, Simpson had no right to call on M'Laughlin to account, and was not entitled to a dividend of the profits. The bill and the testimony show, that, if the debts were not all paid, they were very nearly so: and, there is no sufficient reason shown, why they were not all paid—as the master's report shows a large balance, in the hands of M'Laughlin, out of which he ought to have paid the debts, if any remained unpaid. Under such circumstances he would not be allowed, in a court of chancery, to shelter himself from advancing to his late co-partners, their share of the assets in hand, by the suggestion, merely, that the debts were not all paid—it would be iniquitous to tolerate such a defence. He should have shown what debts remained to be paid, and the reason why they were permitted to be out-standing.

The fourth error relied on, is, that the court left the three notes given by the complainant, Simpson, to Douglass, the special agent of the firm; undisposed of by the decree. The reason expressed in the decree, for not disposing of those notes, seems to me altogether satisfactory. That McLaughlin had caused suit to be brought on them, at law, and that, therefore, they would be left to the action of that court to which he had resorted.

The fifth error relied on, is, that the decree is for too much—that it over-estimates the neat profits of the ware-house. I believe, that in some of its details, there is error in the calculation of the ware-house profits; but, that, in the aggregate, if there is error at all, it is not to the prejudice, but to the advantage of M'Laughlin.

The annual neat profits of the ware-house, is below the estimate that would be fixed, as an average, by the witnesses best informed on that subject. I do not think, that M'Laughlin is entitled to the liberal construction, on his acts, that an agent in the discharge of discretionary powers, vested in him by his principal, might claim. All that we can require at the hands of an agent, is to pursue the instructions of his principal, if any have been given: if his powers are discretionary, then, that he shall act to the best of his judgment, for the advantage of his principal; and, should he fail, in his judgment, and his principal suffer thereby, the agent is not accountable for the loss. But, where the business has been assumed, without the consent, and in violation of the rights of others, he should be held to a strict account; and should be held to account for as much as could have been made, by the best of management. He is to be looked on, in the light

of an intruder, and entitled to no indulgence. I think, therefore, that M'Laughlin is not over-charged in the aggregate of the profits of the ware-house; but, that it is less than it ought to have been. The testimony shows, that, at least one year, he might have rendered the profits greater. And, as he was an intruder, nothing should have been allowed him, for his risk in the management of the ware-house.

The last error relied on, is, that there was no schedule of the testimony, accompanying the master's report.

This objection ought to have been taken below. If it had, the Chancellor could have required the master to furnish the testimony. A schedule of the testimony, is designed for the benefit of the Chancellor—to enable him to decide, whether the exceptions taken to the report, or before the master, should be sustained. The decree does not show, that this exception was taken below; nor does any part of the record show it, to us. We are therefore, to conclude, that no objection was made, on that ground, on the hearing before the Chancellor.

I am of theopinion, that the decree should be affirmed, at the cost of M'Laughlin—both as to the cost in this court, and the court below.

TAYLOR, J.—The opinion of the Chief Justice, being in favor of an affirmance, will, of course, decide the case. On all the points of law, which have been made in the argument, I agree with him; but we differ in opinion, as to what the decree should be, on the facts.

I think, the notes given, by the complainant, to Douglass, and which have been sued on, for the de-

fendant's use, should be embraced in the decree, and settled. The object of the suit, is to settle the partnership business—and it should, as far as possible, be finally adjusted. The circumstance, of suits at law having been brought on these notes, can make no difference. The suit in chancery was not instituted by the partner, who brought the suit at law; and, even if it had been, I can see no good reason for excluding these notes from our consideration, when the object is to do justice between the parties.

I think, too, that the amount of debts due from the firm, should be deducted from what the plaintiff has received, and not accounted for, and a decree rendered for the complaintants, and decedant, Read's proportion to the balance. The debt to Read should also be specifically provided for. It is intended that it shall be paid out of the sum decreed in favor of the complainant: but the decree should expressly say so.

As to the ware-house profits, I agree, that the defendant does not occupy ground which entitles him to favor; yet, it is intended to give him strict justice. The accounts rendered by him, I think, are so far sustained by the depositions of Douglass and O'Neal, as to carry reasonable evidence of their correctness. The opinions of men, as to the gross profits of any business, are entitled to little weight, when compared with regular accounts, even slightly proved. The most of men form exaggerated estimates of such profits, especially, if they are in a situation to contribute to themselves. According to my impressions, a thousand and fifty dollars, would be about the proper sum, which should be considered to be in the hands of the defendant, on this score,

M'LAUGHLIN *vs.* SIMPSON.

with interest to be added to the amount received, after paying expenses, each season. This would be formed as follows : five hundred and seventy-seven dollars and twenty-two cents, for the season of 1826 and '7; three hundred and sixty-one dollars and ninety cents, for the season of 1828 and '9 ; four hundred dollars, for the season 1829 and '30 ; sixty-one dollars and seventy-five cents, for the balance of the season of 1825 and '6, after the plaintiff in error took possession of the ware-house : from this, deduct three hundred and fifty dollars and eighty-seven cents, the loss sustained in 1827 and '8. This loss is accounted for in a satisfactory manner. It appears, that Weaver, who had an inferior ware-house, at the same place, reduced the storage charged on cotton, the only source of profit, from twenty-five cents a bale, the usual price, to twelve and a half: the plaintiff in error, finding himself losing custom by this, reduced it to ten cents; and was, in addition, compelled to pay considerable sums, for necessary repairs.

I will remark, that I hope never to see a case in the situation of this, in this court, again. Without performing a great part of the duties which should have devolved upon the master, it is impossible to make a decree. It is, indeed, safer, for the partices to bring their cases here, properly prepared for our final action—as it cannot, reasonably be expected, that the members of this court, amidst all their necessary vocations, can take time, minutely to examine the details of such a mass of papers. Fully one half, probably two-thirds of this budget, forms really no part of the record, and ought not to be put upon the record books of this court.